```
        IN THE UNITED STATES DISTRICT COURT FOR THE
              EASTERN DISTRICT OF VIRGINIA

                    Alexandria Division

ZHENG GING JU and            )
YEAN FONG WONG JU,           )
                             )
        Plaintiffs,          )
                             )
        v.                   )          1:06cv320(JCC)
                             )
EUGENE J. MARK, JR., ESQ.,   )
et al.,                      )
                             )
        Defendants.          )
```

## **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendants' motions to dismiss and Defendants' motion for entry of an order granting their motions to dismiss. For the following reasons, the Court will grant Defendants' motion to dismiss Count II of Plaintiffs' complaint and will deny the remainder of Defendants' motions.

### I.  Background

Plaintiffs, Zheng Ging Ju and Yean Fong Wong Ju, are a married couple who decided to refinance their home in October of 2004. According to their complaint, an individual named Leslie Tang urged Plaintiffs to refinance their home in order to obtain money to invest in a Massachusetts company known as OneUniverseOnline, Inc. ("1UOL"). Although Plaintiffs subsequently decided against investment in 1UOL, Plaintiffs followed Tang's recommendation to retain First Washington Title &

Escrow Corporation ("First Washington") and Eugene J. Mark to handle the settlement activities related to their refinance.

On October 22, 2004, the settlement was held in Springfield, Virginia.  According to Plaintiffs, Tang acted on behalf of First Washington at the settlement, bringing settlement papers that were prepared by Mark for Plaintiffs' signatures.  The HUD-1 Uniform Settlement Statement ("HUD-1"), which was signed by Mark and both Plaintiffs, provided that $188,443.38 in cash would be disbursed to Plaintiffs on October 27, 2004.[1]

First Washington failed to disburse the $188,443.38 to Plaintiffs on the specified date.  On or about November 4, 2004, First Washington transferred the $188,443.38 to the bank account of 1UOL without Plaintiffs' knowledge or consent.[2]  Plaintiffs then met with Mark at the First Washington office in Rockville, Maryland, which they claim was the first and only time they saw Mark.  At that meeting, Mark informed Plaintiffs that he transferred the money to 1UOL in accordance with a document entitled "Agreement to Split Proceeds."  This document provided for transfer of the entire $188,442.38 to 1UOL and bore a

---

[1] Mark notarized the HUD-1 and the accompanying Deed of Trust, representing that both documents were signed before him in Montgomery County, Maryland.  Plaintiffs claim that Mark's notarization was false.  They contend that the settlement took place in Springfield, Virginia and that Tang attended the settlement in lieu of Mark.

[2] The wire transfer request authorizing this transaction bears a signature purporting to be that of Mr. Ju.  Plaintiffs allege that this signature is a forgery.  The wire transfer request does not bear Mrs. Ju's signature.

signature purporting to be that of Mr. Ju.  Mrs. Ju had not signed the agreement, and Plaintiffs claim that Mr. Ju's alleged signature was a forgery.

Without the cooperation or assistance of Mark or First Washington, Plaintiffs made demands on 1UOL for the return of their money and received $90,902.73 of the proceeds of their refinancing.  Plaintiffs communicated with the Federal Bureau of Investigation about their inability to obtain the remaining funds, and they learned that 1UOL had been sued by the Securities and Exchange Commission for securities fraud in the course of operating an alleged pyramid scheme.  Plaintiffs also learned that three of 1UOL's corporate principals had been indicted for mail fraud in connection with the alleged pyramid scheme.

Based on the above events, Plaintiffs filed this action against First Washington, Mark, and the Hanover Insurance Company, which Plaintiffs claim is liable under a surety bond.  Plaintiffs have asserted claims for breach of contract, negligence, and fraud against each of the Defendants.  On April 19, 2006, Defendants filed two separate motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  These motions are currently before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30

F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

### III.  Analysis

A.  Timeliness of Plaintiffs' Opposition

Defendants filed their motions to dismiss on April 19, 2006.  Pursuant to Local Rule 7(F)(1), Plaintiffs then had eleven (11) days after service of Defendants' motions to file a responsive brief.  Allowing three days for service of Defendants' motions by mail, Plaintiffs' responsive briefs were thus due on May 3, 2006.  Having received no responsive briefs, on May 22, 2006, Defendants filed a motion for entry of an order granting their motions to dismiss.  The following day, Plaintiffs filed their oppositions to Defendants' motions.  This occurred on May

23, 2006, twenty days after Plaintiffs' responsive briefs were due.

Based on the untimeliness of Plaintiffs' opposition papers, Defendants ask the Court to disregard Plaintiffs' oppositions and grant the entirety of the relief requested within Defendants' motions.  Plaintiffs' counsel explains that he failed to respond in a timely fashion because he assumed that Defendants' counsel would contact him about scheduling a convenient reply date and a date for a hearing on the motions.  In the Court's view, this assumption does not justify Plaintiffs' counsel's failure to respond in a timely manner.

Nevertheless, the Court is disinclined to grant the relief requested by Defendants.  The Court could consider Defendants' motions to be withdrawn just as it could consider Plaintiffs' oppositions to be untimely.[3]  In the interests of judicial economy and fairness to the parties, however, the Court will address the parties' arguments on the merits.  Defendants' May 22, 2006 motion for entry of an order granting their previously-filed motions to dismiss will be denied.

---

[3] Local Rule 7(E) provides that "[u]nless otherwise ordered, a motion shall be deemed withdrawn if the movant does not set it for hearing (or arrange to submit it without a hearing) within thirty (30) days after the date on which the motion is filed."  Defendants filed their motions to dismiss on April 19, 2006, so May 19, 2006 constituted the end of this thirty-day period.  Defendants did not set their motions for a hearing at any point and did not arrange for their motions to be decided without a hearing until May 22, 2006, at which time they filed their motion for an entry of an order granting their motions to dismiss.  Under Local Rule 7(E), therefore, Defendants' motions to dismiss could be deemed withdrawn.

B.  Count II: Negligence

Count II of Plaintiffs' complaint alleges that First Washington and Mark acted negligently in breaching their duty to perform the refinance settlement in accord with the HUD-1 and all applicable laws relating to real estate settlements in Virginia. Defendants seek dismissal of Count II, arguing that it is barred by the Virginia economic loss rule.  Defendants submit that the law of contracts, not the law of torts, provides the remedy for the conduct alleged in Plaintiffs' negligence claim.

Indeed, Count II seeks recovery for the same underlying conduct that is the subject of Count I, the breach of contract claim.  In both respects, Plaintiffs seek recovery for breach of the settlement agreements and the applicable law governing such agreements.  As the Virginia Supreme Court has explained, "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts."  *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004).  In *Filak*, the Virginia Supreme Court held that the plaintiffs could not state a constructive fraud claim against their insurance agent where the agent's duties arose solely from an alleged oral contract with the plaintiffs.  *See id.* at 614.  The court justified this "economic loss rule" based on different policy considerations underlying the law of contracts and the law of torts.

> The primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations. Thus, when a plaintiff alleges and proves nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic losses.
>
> . . .
>
> The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society.

*Id.* at 613.

Plaintiffs argue that because their negligence claim alleges the breach of duties imposed by statute, the economic loss rule is inapplicable. Plaintiffs claim that the conduct of First Washington and Mark independently violated several provisions of the Virginia Consumer Real Estate Settlement Protection Act ("CRESPA"). *See, e.g.*, Va. Code. § 6.1-2.23(A)(2) ("The [settlement] funds shall be applied only in accordance with the terms of the individual instructions or agreements under which the funds were accepted.").

Despite the obligations imposed upon settlement agents by the CRESPA, the Court finds that the economic loss rule bars Plaintiffs' negligence claim. The CRESPA obligations cited by Plaintiffs are not "statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society," as contemplated by the *Filak* court. *See*

-7-

*Filak*, 594 S.E.2d at 613.  Rather, they are obligations that arose solely because the settlement agent entered into an agreement with Plaintiffs.  *See* Va. Code. § 6.1-2.23(A) ("All funds deposited with the settlement agent *in connection with an escrow, settlement or closing* shall be handled in a fiduciary capacity . . . ." (emphasis added)).  Such obligations are precisely what the *Filak* court envisioned in discussing the applicability of the economic loss rule.[4]

Plaintiffs also argue that they have stated claims for injury to their persons and property, rendering the economic loss rule inapplicable.  Plaintiffs point out that their complaint alleges that Defendants' actions caused them anguish and suffering, and they contend that the creation of a lien on their residence constituted injury to their property.  Plaintiffs have not, however, alleged damages for either of these purported injuries.  As such, they have not stated claims for injury to their persons or property.  As Plaintiffs' negligence claim alleges conduct that is more appropriately addressed under

---

[4]The Virginia Supreme Court's treatment of negligence claims against persons in regulated professions also demonstrates why the statutory duties contained within the CRESPA cannot give rise to a negligence claim.  Where a negligence claim is alleged against an attorney, accountant, or architect for conduct that is governed by the terms of a contract, the Virginia Supreme Court has held that the plaintiff's remedy must lie in contract, not tort. *See, e.g.*, *Ward v. Ernst & Young*, 435 S.E.2d 628, 632 (Va. 1993).  Attorneys, accountants, and architects are all regulated by state law; yet, the existence of such regulatory obligations does not give rise to duties to the public at large.  *See id.*

contract law, the Court will grant Defendants' motion to dismiss Count II of the complaint.

### C.  Count III: Fraud

Count III of Plaintiffs' complaint alleges that Mark and First Washington committed fraud in connection with the refinance settlement.  Specifically, Plaintiffs allege that Mark and First Washington were aware that Tang's purpose for bringing customers to First Washington was to obtain money to be invested in 1UOL.  Plaintiffs further allege that Mark and First Washington were aware of 1UOL's common practice of enticing Asian immigrants to invest in 1UOL through false claims of extraordinary returns on their investments.  In spite of this knowledge, according to Plaintiffs, Mark agreed to transfer the proceeds from Plaintiffs' refinancing to 1UOL without Plaintiffs' knowledge.  Afterwards, Mark falsely told Plaintiffs that the "Agreement to Split Proceeds" and the wire transfer request were legally enforceable.  Plaintiffs allege that Mark made this misrepresentation in order to hide Defendants' misconduct, to induce Plaintiffs to leave their money with 1UOL, and to discourage Plaintiffs from taking legal action against First Washington or himself.

Defendants argue that Plaintiffs have failed to state a claim for fraud.  The elements of a fraud claim in Virginia are: "(1) a false representation, (2) of a material fact, (3) made

intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994). Concealment of a material fact, whether accomplished by word or conduct, may be the equivalent of a false representation. *See Van Deusen v. Snead*, 441 S.E.2d 207, 209-10 (Va. 1994). Furthermore, a claim of fraud may be brought based on a defendant's alleged misrepresentation of intent to perform a contract. *See Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985).

In this case, Defendants rely heavily on Plaintiffs' admission that they did not meet Mark until after they had been parted with their money. Indeed, the only alleged representations made by Mark himself occurred after the purported damage--the transfer of Plaintiffs' funds to 1UOL--took place. Plaintiffs could not have relied, to their detriment, on Mark's representations as to the validity of the "Agreement to Split Proceeds." Plaintiffs allege that this misrepresentation had the effect of hiding Defendants' misconduct, inducing Plaintiffs to leave their money with 1UOL, and discouraging Plaintiffs from taking legal action against Defendants. Yet, Plaintiffs' subsequent recovery of portion of their funds from 1UOL and their filing of the instant lawsuit belie the notion that they relied on Mark's misrepresentation to their detriment.

Nevertheless, the Court finds that Plaintiffs have stated a claim for fraud against Mark and First Washington. At this early stage, it is the Court's obligation to liberally construe the material allegations of the complaint. *See Jenkins*, 395 U.S. at 421. So construed, the complaint alleges that First Washington deliberately concealed its intent to transfer Plaintiffs' settlement funds to 1UOL, in derogation of its agreements with Plaintiffs. Consequently, when they chose to employ First Washington as a settlement agent, Plaintiffs relied on the impression that they would receive the settlement funds.[5] The resulting alleged damage occurred when First Washington transferred Plaintiffs' funds to 1UOL without Plaintiffs' knowledge or consent. Such allegations are sufficient to state a claim for fraud. Accordingly, the Court will deny Defendants' motion insofar as it seeks dismissal of Count III.

D. Defendant Mark's Liability

In their second motion to dismiss, Defendants seek dismissal of all claims against Mark. Defendants forward the blanket assertion that Plaintiffs have not alleged facts sufficient to hold Mark liable under any theory. Plaintiffs argue that because Mark was their settlement agent, he is

---

[5] It is immaterial at this stage that Tang, not Mark, was present at the settlement. Plaintiffs' complaint alleges that Tang was acting as First Washington's agent for purposes of the settlement, and that First Washington is therefore liable for Tang's representations under a *respondeat superior* theory. (*See* Compl. ¶ 63.)

-11-

directly liable on all counts.  Plaintiffs' premise is questionable at least with respect to the breach of contract claim, as it is unclear whether Mark was even a contracting party.[6]  Given the broad posture in which this issue has been argued, however, the Court will not attempt to analyze the various theories under which Mark could be held liable; suffice it to say for now that Plaintiffs have alleged facts sufficient to state a claim for holding Mark liable under a theory of piercing the corporate veil.

Defendants have asserted that Mark is the owner and sole shareholder of First Washington.  It is axiomatic "that a corporation is a legal entity separate and distinct from the stockholders or members who compose it."  *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 360 S.E.2d 828, 831 (Va. 1987).  The Virginia Supreme Court has instructed that

> disregarding the corporate entity is usually warranted only under the extraordinary circumstances where "the shareholder[s] sought to be held personally liable [have] controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage. Piercing the corporate veil is justified when the unity of interest and ownership is such that the separate personalities of the corporation and the individual[s] no longer exist and to adhere to that separateness would work an injustice."

---

[6] The HUD-1 lists First Washington, not Mark, as Plaintiffs' settlement agent. (*See* Compl. Ex. 3.)  Although Plaintiffs have alleged that Mark took actions that resulted in him being deemed their "settlement agent" under the CRESPA, *see* Va. Code § 6.1-2.20, they have not yet submitted anything to indicate that Mark, individually, contracted with Plaintiffs.

*Dana v. 313 Freemason*, 587 S.E.2d 548, 553-54 (Va. 2003) (quoting *O'Hazza v. Executive Credit Corp.*, 431 S.E.2d 318, 320-21 (Va. 1993)) (alterations in original).

In the present case, Plaintiffs have alleged that Mark used the corporate form of First Washington to perpetuate a fraudulent transaction.  According to their complaint, Mark employed Tang as an agent of First Washington to induce Plaintiffs into agreeing to retain First Washington as their settlement agent.  Pursuant to this agreement, the proceeds from Plaintiffs' refinance were placed in First Washington's escrow account.  Mark then personally transferred such funds to 1UOL's account without Plaintiffs' knowledge or consent.  In light of the alleged circumstances, the Court finds that adherence to the separateness of the corporate form would work an injustice.  As such, Plaintiffs have alleged sufficient facts to state claims against Mark in Counts I and III of their complaint.

E.   Punitive Damages

Defendants' final contention, raised in their first motion to dismiss, argues that Plaintiffs have failed to allege sufficient facts to support their claim for punitive damages.  According to the Virginia Supreme Court, "punitive damages are allowable only where there is misconduct or malice, or such recklessness or negligence as evinces a conscious disregard of the rights of others."  *Booth v. Robertson*, 374 S.E.2d 1, 2 (Va.

1988) (internal quotation marks and citations omitted).  A claim for punitive damages "must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton."  *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003).

As indicated repeatedly in the preceding sections, Plaintiffs have alleged conduct, which, if true, was both willful and fraudulent.  Upon viewing the complaint in a light favorable to Plaintiffs, the Court is simply unprepared to say that Plaintiffs have failed to allege facts showing willful or wanton conduct evincing a conscious disregard of their rights.  Thus, Plaintiffs' claim for punitive damages will stand.

### IV.  Conclusion

For the foregoing reasons, the Court will deny Defendants' May 22, 2006 motion for entry of an order granting their motions to dismiss, grant Defendants' motion to dismiss Count II of the complaint, and deny the remainder of Defendants' motions to dismiss.  An appropriate Order will issue.


June 13, 2006                           _____/s/_____
Alexandria, Virginia                         James C. Cacheris
                                      UNITED STATES DISTRICT COURT JUDGE